FORD & HARRISON LLP
Terry L. Higham, SBN 150726
tlhigham@fordharrison.com
Jennifer S. McGeorge, SBN 221679
jmcgeorge@fordharrison.com
350 S. Grand Avenue, Suite 2300
Los Angeles, CA 90071-3425
Telephone: 213-237-2400
Facsimile: 213-237-2401

Attorneys for Plaintiff
HOBBY LOBBY STORES, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOBBY LOBBY STORES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> FRANK KOVACS and MAUREEN KOVACS, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT** |

TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS:

PLEASE TAKE NOTICE that Plaintiff Hobby Lobby Stores, Inc. ("Hobby Lobby"), by and through its attorneys, Ford & Harrison LLP and Pearlstein & McCullough LLP, as and for its Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1. In this action, Plaintiff Hobby Lobby asserts a claim for fraud against Frank Kovacs ("Mr. Kovacs") and Maureen Kovacs ("Mrs. Kovacs") (together, the "Kovacs'") in connection with an ancient Mesopotamian cuneiform tablet bearing part of the Epic of Gilgamesh, c. 1600 BC (the "Tablet"). Pursuant to a Private Sale Agreement dated July 14, 2014 (the "Private Sale Agreement") between (i) Hobby Lobby, as Buyer, and (ii) Christie's, Inc. ("Christie's") and Joseph David

Hackmey ("Hackmey"), as Seller (together, the "Sellers"), Hobby Lobby purchased the Tablet from the Sellers (the "Purchase") for $1,674,000 (the "Purchase Price").

2. On May 18, 2020, the United States filed a Verified Complaint In Rem in the Eastern District of New York ("EDNY") against the Tablet alleging that the Tablet was imported by an "Antiquities Dealer" in violation 19 USC §1595a(c)(1)(A) (the "Forfeiture Action"). The predicate offense under §1595a was the fact that the Tablet was stolen Iraqi cultural property under the National Stolen Property Act, 18 USC §2314, that was imported into the United States by the "Antiquities Dealer" in 2003. Unknown to Hobby Lobby at the time, Mr. Kovacs was the unnamed "Antiquities Dealer" mentioned in the Forfeiture Action.

3. Prior to the Purchase, the Sellers made statements to Hobby Lobby concerning the Tablet's provenance (i.e., its history of ownership and chain of title) by (i) presenting Hobby Lobby with a false sale history created by Mr. Kovacs about a 1981 sale of the Tablet in the United States that disguised the illegal importation of the object into the United States after 1990 and (ii) excluding Mr. Kovacs's name from the provenance. The exclusion of Mr. Kovacs's name from the provenance prevented Hobby Lobby and governmental authorities in both the United Kingdom and the United States from discovering the falsity of the fictitious sale history. [Redacted Text].

4. [Redacted Text].

5. On July 15, 2021, the United States filed an Amended Verified Complaint In Rem seeking the Tablet's forfeiture based upon (i) Mr. Kovacs's illegal importation of the Tablet in 2003 and (ii) Christie's illegal importation of the Tablet in 2014. On the same day, the United States and Hobby Lobby entered a Stipulation of Forfeiture in which the parties agreed that the Tablet was imported by Mr. Kovacs in 2003 and by Christie's in 2014 in violation 19 USC §1595a(c)(1)(A). The predicate offenses in violation of §1595a were Mr. Kovacs's and Christie's' (i) smuggling of the Tablet into the United States in 2003 and 2014,

and ii) knowing importation of the Tablet in violation of 19 USC §2609, as the Tablet was designated archaeological material exported from Iraq after August 1990.

6. The court entered a Decree of Forfeiture on July 25, 2021. As a result, Hobby Lobby lost both the Tablet and the entire value of the Purchase Price it paid to the Sellers.

## THE PARTIES

7. Plaintiff Hobby Lobby Stores, Inc. is a corporation formed under the laws of the state of Oklahoma with its principal place of business at 7707 SW 44th Street, Oklahoma City, Oklahoma, 73139.

8. Upon information and belief, Defendants Mr. Kovacs and Mrs. Kovacs are individuals residing in the state of California at 427 Manzanita Ave., Corte Madera, CA 94925.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) because the Defendants are subject to the court's personal jurisdiction with respect to this action.

## ALLEGATIONS

**Mesopotamian Cuneiform Tablets on the International Art Market**

11. Cuneiform, one of the earliest systems of writing, was created and used by the Sumerians in ancient Mesopotamia, who formed characters by impressing triangular-shaped wedges into wet clay tablets. The term cuneiform comes from cuneus, Latin for "wedge."

12. Cuneiform tablets have been collected by museums and private

collectors in the United States since the 19th century. However, from the inception of the First Gulf War in 1990, the United States has maintained a ban on imports of cultural property originating in Iraq under (i) a series of UN Security Council Resolutions and Executive Orders issued by Presidents George H.W. Bush and George W. Bush,[1] (ii) 2004 Congressional authorization providing the President with authority under the Convention on Cultural Property Implementation Act,[2] and (iii) comprehensive sanctions regulations issued by the Department of Treasury.[3] Since 1990, these laws and regulations have, among other things, made illegal the importation of ancient cuneiform objects removed from Iraq after August 1990.

13. To comply with applicable United States' import laws, prudent, law-abiding cuneiform collectors are careful to deal only in objects with an ownership history dating prior to 1990, establishing that the object was outside of Iraq as of that date.

14. Collectors also rely on the expertise of sophisticated art sellers, such as established antiquities dealers and auctioneers, to verify an object's legal ownership. Accordingly, the sale of an object at a reputable dealer or auctioneer indicates to the art market that the dealer or auctioneer considers the object to be legally owned, and the art market, in turn, relies on that imprimatur of legality with respect to future sales, loans, and exhibitions.

**The Tablet**

15. The best-known piece of literature from ancient Mesopotamia is the story of Gilgamesh, a legendary ruler of Uruk, and his search for immortality. The

---

[1] Executive Order 12722 of August 3, 1990; United Nations Security Council Resolution No. 661 of August 6, 1990; Executive Order 12724 of August 13, 1990; United Nations Security Council Resolution 1483; and Executive Order 13350 of July 30, 2004.

[2] The Emergency Protection for Iraqi Cultural Antiquities Act of 2004 (title III of Pub. L. 108-429); Final rule, Import Restrictions Imposed on Archaeological and Ethnological Material of Iraq, Federal Register, Vol. 73, No. 84, Wednesday, April 30, 2008, at p. 2334 (available at https://www.govinfo.gov/content/pkg/FR-2008-04-30/pdf/E8-9343.pdf).

[3] Iraq Stabilization and Insurgency Sanctions Regulations, codified at 31 C.F.R. part 576, were promulgated in a FinalRule by the Department of the Treasury's Office of Foreign Assets Control on September 13, 2010.

Epic of Gilgamesh is a voluminous work, the longest piece of literature in Akkadian, the language of Babylonia and Assyria. It was known across the ancient Near East, with versions also found at Hattusas (the capital of the Hittites), Emar in Syria, and Megiddo in the Levant.

16. The Tablet was likely created during the First Sealand Dynasty, circa early sixteenth century, B.C., in the middle Babylonian period. Sealand refers to a province in the far south of Babylonia, a swampy region between the mouths of the Tigris and Euphrates rivers in modern-day Iraq.

17. Upon information and belief, the Tablet was first seen on the international art market by Mr. Kovacs and Mrs. Kovacs in 2001 while the Tablet was in the possession of a Jordanian antiquities dealer in London. In 2003, Mr. Kovacs' purchased the Tablet in London and imported it into the United States.

18. In February 2007, Mr. Kovacs sold the Tablet to a pair of buyers ("2007 Buyers") for $50,000 without supplying a provenance, but later, upon request, supplied the 2007 Buyers with a provenance that, according to a sworn statements by Mr. Kovacs and Mrs. Kovacs, was fictitious, i.e., that the Tablet had been part of an auction sale on August 20, 1981, at Butterfield and Butterfield, San Francisco ("Butterfield's"), lot number 1503 (the "Butterfield's Provenance"). Mr. Kovacs memorialized the Butterfield's Provenance in a Statement to the 2007 Buyers (the "False Provenance Statement"). Specifically, the False Provenance Statement represented that the Tablet had been purchased as part of lot 1503 at the Butterfield's auction "in a lot of miscellaneous objects including several other antiquities, none of them completely described" and "was said to have been deaccessioned from a small museum."

19. Upon information and belief, in 2007, the 2007 Buyers sold or consigned the Tablet to Michael Sharpe Rare and Antiquarian Books in Pasadena, California ("Michael Sharpe") using the Butterfield's Provenance. Michael Sharpe published a catalogue including the Tablet with an asking price of $450,000.

20. Upon information and belief, Hackmey purchased the Tablet from Michael Sharpe in 2007.

**Christie's Sale of the Gilgamesh Tablet**

21. In December 2013, Hackmey consigned the Tablet to Christie's in London for private sale.

22. Hackmey, in connection with the consignment, provided Christie's with, inter alia, the False Provenance Statement produced by Mr. Kovacs which, upon information and belief, Hackmey had obtained in connection with his purchase of the Tablet from Michael Sharpe.

23. [Redacted Text].

24. In late December 2013, Georgiana Aitken ("Aitken"), Christie's Head of Antiquities in London, spoke with Mr. Kovacs over the phone [Redacted Text].

25. [Redacted Text].

26. [Redacted Text].

27. Christie's prepared, [Redacted Text], a private sale catalogue for potential purchasers (the "Private Sale Catalogue") that described the Tablet and set forth a provenance omitting Mr. Kovacs's name. It read as follows:

**Provenance**

Butterfield and Butterfield, San Francisco, 20 August 1981, lot 1503. with

Michael Sharpe Rare and Antiquarian Books, Pasadena, California[.]

28. [Redacted Text].

29. In March 2014, Christie's contacted Hobby Lobby to solicit Hobby Lobby's interest in the Tablet. Hobby Lobby, through an agent, viewed the Tablet at Christie's in London.  As Christie's was aware, Hobby Lobby was active in the private art market in building a biblical antiquities collection to serve as the base collection for a new museum planned to be built in Washington, DC, the Museum of the Bible ("MOTB").

30. Christie's International Head of Books, Margaret Ford ("Ford")

provided Hobby Lobby with the Private Sale Catalogue containing the fraudulent provenance. Hobby Lobby had no basis to question the accuracy of that provenance and the parties proceeded to reach agreement for Hobby Lobby to purchase the Tablet, eventually entering into the Private Sale Agreement.

31. Prior to consummating the Purchase, Hobby Lobby asked Christie's to provide it with all the information and documents Christie's possessed to support the provenance in the Private Sale Catalogue. [Redacted Text].

32. On July 15, 2014, Ford notified Hobby Lobby that the Tablet had been imported into the United States and presented Hobby Lobby with a Private Sale Agreement for the purchase.

33. On July 24, 2014, pursuant to the Private Sale Agreement, Hobby Lobby agreed to purchase the Tablet for the $1,674,000 Purchase Price. Hobby Lobby wired the Purchase Price to Christie's' bank account on July 30, 2014.

34. In September 2014, Ford personally delivered the Tablet to Hobby Lobby from New York to Oklahoma City by plane.

**Christie's Reaffirmation of the Fictitious Provenance in 2017**

35. After the Purchase, Hobby Lobby transferred possession of a group of objects, including the Tablet, to MOTB. The Tablet was to be included in the initial display at MOTB's opening on November 17, 2017. Prior to the opening in 2017, Hobby Lobby through MOTB asked Christie's to reaffirm the Butterfield's Provenance. In addition, an MOTB representative asked a Christie's representative to provide the names of the Tablet's owners prior to Michael Sharpe.

36. In response to Hobby Lobby's request through MOTB, representatives of Christie's Antiquities Department in London (i) provided Hobby Lobby and the MOTB with additional but incomplete documentation concerning the Tablet's provenance, and (ii) after unsuccessfully attempting to contact Mr. Kovacs in the fall of 2017, represented to Hobby Lobby and MOTB that the Butterfield's buyer (Mr. Kovacs) had confirmed the accuracy of the Butterfield's Provenance in 2014.

37. [Redacted Text].

38. In October 2017, MOTB, unaware that Mr. Kovacs was the former owner of the Tablet, contacted Mrs. Kovacs to seek information from Mrs. Kovacs about the origin of the Tablet because MOTB was told that Mrs. Kovacs had translated the writing on the Tablet. Neither Mrs. Kovacs nor Mr. Kovacs returned MOTB's call.

39. Hobby Lobby and MOTB, provided with an incomplete provenance and denied any means by which it could pursue further inquiries concerning the provenance, accepted Christie's' reassurances, crediting Christie's' reputation as the world's largest and most renowned auction house.

**The Government's Seizure of the Tablet**

40. On September 24, 2019, agents from the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") appeared at MOTB and seized the Tablet pursuant to an ongoing investigation of the Tablet's origin and its importation into the United States.

41. [Redacted Text].[4]

42. [Redacted Text].

43. Prior to learning of the foregoing, Hobby Lobby was unaware of the Tablet's false provenance, having been prevented, both in 2014 and in 2017, from learning of the problems with the provenance.

**The Government's Forfeiture Action**

44. On May 18, 2020, the U.S. Attorney's Office for the Eastern District of New York ("EDNY DOJ") commenced the Forfeiture Action in the EDNY, entitled "*United States v. One Cuneiform Tablet known as the "Gilgamesh Dream Tablet*" (Index No. 20 CV 2222 (EDNY)), to recover the Tablet based on evidence it claimed established that the Tablet was stolen from Iraq and illegally imported

---

[4] [Redacted Text]

into the United States by the "Antiquities Dealer" in 2003.

45. On June 23, 2020, Hobby Lobby filed a Verified Claim in the Forfeiture Action. [Redacted Text].

46. [Redacted Text].

**Hobby Lobby's Lawsuit Against Christie's and Hackmey**

47. On May 19, 2020, Hobby Lobby filed a lawsuit in the EDNY for breach of contract and fraud against Christie's Inc. and the Tablet's owner, Hackmey. *Hobby Lobby Stores, Inc. v Christie's and John Doe #1*, No. 20 CV 2239 (EDNY). At the time, Hackmey was unknown to Hobby Lobby because the Forfeiture Complaint did not name Hackmey personally.

48. On February 1, 2021, Hobby Lobby filed an amended complaint against Christie's and Hackmey, this time including Hackmey as a named defendant. *Hobby Lobby Stores, Inc. v. Christie's Inc. and Joseph David Hackmey*, No. 20-CV-2239 (EDNY). [Redacted Text].

49. On December 2, 2021, and pursuant to a settlement agreement, Hobby Lobby, Christie's, and Hackmey agreed to voluntarily dismiss, with prejudice, all claims and causes of action asserted by Hobby Lobby in the lawsuit pursuant to Fed. R. Civ. P. 41(a)(1)(A).

## FIRST CLAIM FOR RELIEF
### (Fraud)

50. Hobby Lobby repeats and realleges each allegation set forth in paragraphs 1 through 49, inclusive, as if set forth herein.

51. [Redacted Text].

52. [Redacted Text].

53. [Redacted Text].

54. [Redacted Text].

55. [Redacted Text].

56. [Redacted Text].

1  57. [Redacted Text].

2  58. Mr. and Mrs. Kovacs were contacted by a member of staff at MOTB in 2017 about Mrs. Kovacs role in the translation of the Tablet's cuneiform writing. Neither Mr. Kovacs nor Mrs. Kovacs alerted MOTB and Hobby Lobby that the provenance information and other documents they provided to Christie's were false.

59. By reason of the foregoing, Hobby Lobby has been damaged as a proximate cause of Kovacs' deceitful and fraudulent conduct and is entitled to recover a portion of the Purchase Price, [Redacted Text], together with interest from July 2014 and attorney's fees and costs.

60. Hobby Lobby is entitled to punitive damages against the Kovacs' because they engaged in an intentional tort and/or engaged in willful misconduct [Redacted Text].

## DEMAND FOR RELIEF

WHEREFORE, Hobby Lobby demands judgment against the Defendants, jointly and severally, as follows:

(a) Requiring Defendants to pay $[Redacted Text], which is excess of the jurisdictional minimum under 28 U.S.C. § 1332, to Hobby Lobby together with interest from July 2014 as allowed by law;

(b) Awarding Hobby Lobby punitive damages;

(c) Awarding Hobby Lobby all attorneys' fees and expenses and other costs it has incurred in this action; and

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1      (d)    Granting any further and different relief as the Court deems just and proper.

Dated: May 18, 2022

Respectfully submitted,

FORD & HARRISON LLP

By: */s/ Jennifer S. McGeorge*
    Terry L. Higham
    Jennifer S. McGeorge
    Attorneys for Plaintiff
    HOBBY LOBBY STORES, INC.

# PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Hobby Lobby Stores, Inc. demands trial by jury in this action of all issues so triable.

Dated: May 18, 2022

Respectfully submitted,

FORD & HARRISON LLP

By: */s/ Jennifer S. McGeorge*
  Terry L. Higham
  Jennifer S. McGeorge
  Attorneys for Plaintiff
  HOBBY LOBBY STORES, INC.

WSACTIVELLP:13128784.1